CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 09 2015

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TIA FOSTER, et al., | ) |
| | ) Civil Action No. 7:14CV00698 |
| Plaintiffs, | ) |
| | ) **MEMORANDUM OPINION** |
| v. | ) |
| | ) Hon. Glen E. Conrad |
| GOLD & SILVER PRIVATE CLUB, INC., | ) Chief United States District Judge |
| et al., | ) |
| | ) |
| Defendants. | ) |

This collective action under the Fair Labor Standards Act ("FLSA") is presently before the court on the plaintiffs' motion for partial summary judgment. For the reasons set forth below, the motion will be granted in part and denied in part.

**Factual Background**

The following facts are either undisputed or, where disputed, are presented in the light most favorable to the defendants. See Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (emphasizing that courts must view the evidence on summary judgment in the light most favorable to the nonmoving party).

Plaintiffs Tia Foster, Jessica Hobb, Jessica Reed, Shanita Hughes, and Teresa Hiner work, or have worked, as exotic dancers at the Gold & Silver Private Club ("the Club") in Roanoke, Virginia. The Club is managed by Southwest Virginia Investments, Inc., of which Billy H. Harbour is the president and sole shareholder. The Club's bookkeeping is performed by John A. Carter, who is one of three partners in Twin Peaks LLC, which loaned the Club $420,000 in 2006 and currently holds the mortgage on the property.

The Club is a "social and recreation club that encourages socializing, co-mingling, and fellowship among members," who "are bound together by an appreciation of artistic exotic dancing." Membership Application Form, Docket No. 61-6 at 3. Members are required to sign an application form that sets forth the Club's rules. The rules prohibit members from using foul language, touching the Club's dancers, using any type of recording device, or consuming alcohol on the premises. Members may purchase nonalcoholic beverages from the bar at the Club.

The Club's dancers work from either 7:00 p.m. to 11:00 p.m. or 10:00 p.m. to 3:00 a.m. They are paid with tips from dances performed on stage and with money received for performing "couch dances." The Club sets the couch dance fee at $20.00, which is split between the Club and the dancers. Additionally, for every shift worked, the dancers are required to pay a $1.00 ATM fee and a jukebox/music fee. In lieu of a jukebox, the Club maintains a subscription with Rhapsody.com, an online music-streaming service. The dancers utilize the music-streaming service to play the songs that accompany their performances.

Each of the Club's dancers is required to sign an "independent contractor agreement," which lists the date on which the dancer was "hired." Independent Contractor Agreement, Docket No. 61-6 at 1. The agreement provides, in pertinent part, as follows:

> Whereas, the Contractor agrees to perform at the Company location as an exotic dancer, at all times as an independent contractor. She is free to choose her days to work and must provide her own costumes. She selects her own songs . . . for stage dances and cho[oses] her own dance routines. Also the Contractor agrees to work full shifts, following Company guidelines.
>
> Whereas, at all times of operations the Contractor will receive and keep all of her tips received while performing on stage as an exotic dancer. Furthermore she is to keep one half of the fee for each and every private "couch dance" performed by her, except for the collection of any and all fees owed to the Company by the Contractor, including but not limited to the daily ATM and Jukebox fees, to cover those costs, [and] also any fines or other monies she may owe to the Company.

Id.

Over the last several years, dancers have been subject to various fines, the most common of which were for leaving work early in violation of the Club's rules. In addition to working a full shift, dancers are required to refrain from consuming alcohol or drugs, and can be suspended for violating this rule. The Club also, at various times, has prohibited dancers' boyfriends or significant others from being allowed in the Club, and has disciplined dancers for violating this rule.

## Procedural History

On December 22, 2014, Foster, Hobb, and Reed filed an initial complaint against the Club, Harbour, Southwest Virginia Investments, and Melons, Inc., alleging that the defendants failed to comply with the minimum wage requirements of the FLSA. On April 17, 2015, an amended complaint was filed that added Hughes and Hiner as plaintiffs.

On May 6, 2015, the court granted the plaintiffs' motion for conditional certification as a collective action and for notice to potential class members, which was unopposed by the defendants. Johanna Phillips subsequently joined the action as an opt-in plaintiff.

On June 12, 2015, the plaintiffs filed a second amended complaint, which added Carter as a defendant. On September 1, 2015, the plaintiffs filed a third amended complaint, which added a claim for retaliation in violation of the FLSA.

The plaintiffs filed a motion for partial summary judgment on September 30, 2015, in which they ask the court to find in their favor on the following issues:

1. Whether the plaintiffs are independent contractors or employees for purposes of the FLSA;

2. Whether there is individual and/or enterprise coverage under the FLSA;

3. Whether Southwest Virginia Investments, Harbour, and Carter qualify as the

plaintiffs' employers for purposes of the FLSA; and

5. Whether the defendants willfully violated the FLSA.

The court held a hearing on the plaintiffs' motion for partial summary judgment on November 9, 2015. The motion has been fully briefed and is ripe for review.

## Standard of Review

An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013) (quoting Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

In considering a motion for summary judgment, the court must view the record in the light most favorable to the nonmoving party. Tolan, 134 S. Ct. at 1866. To withstand a summary judgment motion, the nonmoving party must produce sufficient evidence from which a reasonable jury could return a verdict in that party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Conclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence' in support of [the nonmoving party's] case." Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (quoting Phillips v. CSX Transp., Inc., 190 F.3d 285, 287 (4th Cir. 1999)).

## Discussion

"The FLSA is best understood as the 'minimum wage/maximum hour law.'" Trejo v. Ryman Hospitality Props., Inc., 795 F.3d 442, 446 (4th Cir. 2015) (quoting Monahan v. County of

4

Chesterfield, 95 F.3d 1263, 1266 (4th Cir. 1996)). "In enacting the FLSA, Congress intended 'to protect all covered workers from substandard wages and oppressive working hours.'" Id. (quoting Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981). Thus, as relevant here, the Act mandates a minimum wage for covered employees, 29 U.S.C. § 206(a), and provides a cause of action for violations of this provision. See 29 U.S.C. § 216(b).

I. **Employee Determination**

The first issue raised in the plaintiffs' motion for partial summary judgment is whether the plaintiffs are employees within the meaning of the FLSA. The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). In addition, the verb "employ" is defined "expansively to mean 'suffer or permit to work.'" Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992) (quoting 29 U.S.C. § 203(g)). "These definitions broaden 'the meaning of 'employee' to cover some [workers] who might not qualify as such under a strict application of traditional agency [or contract] law principles.'" Schultz v. Capital Int'l Sec., Inc., 466 F.3d 298, 304 (4th Cir. 2006) (quoting Darden, 503 U.S. at 326).

In order to determine whether a worker is an employee or an independent contractor under the FLSA, the court must consider the "economic realities" of the relationship between the worker and the putative employer, rather than any labels used by the parties themselves. Id.; see also Rutherford Food Corp. v. McComb, 331 U.S. 722, 729 (1947) ("Where the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the Act."). The crux of this analysis is whether the worker is "economically dependent on the business to which [she] renders service or is, as a matter of economic [reality], in business for [her]self." Schultz, 466 F.3d at 304 (internal citation and quotation marks omitted).

5

Courts have developed a six-factor test to determine whether the economic realities indicate that a worker is an employee or an independent contractor. Id. Those factors are as follows:

> (1) the degree of control that the putative employer has over the manner in which the work is performed: (2) the worker's opportunities for profit or loss dependent on [her] managerial skill; (3) the worker's investment in equipment or material, or [her] employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business.

Id. at 304-05. "No single factor is dispositive and courts are directed to look at the totality of the circumstances." McFeeley v. Jackson Street Ent't, LLC, 47 F. Supp. 3d 260, 267 (D. Md. 2014) (internal citation and quotation marks omitted). If, after application of the six factors, "the moving party has shown that there is 'no doubt' as to the relationship between the parties, the court may determine as a matter of law that the worker is an employee or independent contractor." Id. (internal citations omitted).

### A. Degree of Control

The first factor is the "degree of control that a putative employer has over the manner in which the work is performed." Schultz, 466 F.3d at 304-05. In other FLSA cases involving exotic dancers, courts have found it appropriate to "look not only at the club's rules and guidelines regarding the dancers' performances and behavior, 'but also to the club's control over the atmosphere and clientele.'" McFeeley, 47 F. Supp. 3d at 268 (quoting Butler v. PP&G, Inc., No. WMN-13-430, 2013 U.S. Dist. LEXIS 159417 (D. Md. Nov. 7, 2013). "Examples of clubs exerting significant control include: fining dancers for absences and tardiness; enforcing behavioral rules; setting minimum performance fees; and requiring dancers to sign in upon arrival." Id. (citing cases).

6

In this case, the undisputed facts establish that the Club exercises significant control over the dancers, as well as the Club's atmosphere and clientele. The Club sets the fee that is charged for the couch dances that the dancers perform, and requires the dancers to pay certain fees every day that they elect to work. Although the dancers are able to choose the particular shifts that they wish to work, they are required to complete their shifts and have been fined for leaving early. The dancers are also subject to other behavioral rules, including rules prohibiting drugs and alcohol and restricting the attendance of significant others. See Thompson v. Linda & A., Inc., 779 F. Supp. 2d 139, 148 (D.D.C. 2011) (citing to a gentlemen club's rules prohibiting "cussing, fighting, biting, scratching, or drugs," as well as inappropriate behavior on stage, in deciding that the control factor weighed in favor of the dancers). Additionally, the hours of operation, membership rules and requirements, and types of beverages sold are determined by the Club. Accordingly, the significant degree of control exercised by the Club weighs in favor of finding that the plaintiffs are employees rather than independent contractors.

### B. Opportunity for Profit or Loss

The second factor evaluates the workers' opportunities for profit or loss dependent on their managerial skills. See Schultz, 466 F.3d at 305. As set forth above, the Club sets the price charged for the couch dances performed by the dancers, which substantially affects the dancers' ability to make a profit. Although the dancers are also paid through tips from customers, the "argument . . . that the ability to earn tips suggests that a worker has an opportunity for profit or loss in the business consistent with independent contractor status . . . has been routinely rejected by courts in other FLSA cases involving exotic dancers." Thompson, 779 F. Supp. 2d at 149; see also McFeeley, 47 F. Supp. 3d at 270 (citing cases). As the United States Court of Appeals for the Fifth Circuit explained in Reich v. Circle C. Investments, Inc., 998 F.2d 324 (5th Cir. 1993):

7

> [O]nce customers arrive at [the defendant's] nightclubs, a dancer's initiative, hustle, and costume significantly contribute to the amount of her tips. But [the defendant] has a significant role in drawing customers to its nightclubs [and] is responsible for advertisement, location, business hours, maintenance of facilities, aesthetics, and inventory of beverages and food.
>
> Given its control over determinants of customer volume, [the defendant] exercises a high degree of control over a dancer's opportunity for profit. The dancers are far more closely akin to wage earners tolling for a living, than to independent entrepreneurs seeking a return on their risky capital investments.

Reich, 998 F.2d at 328 (internal citations and quotation marks omitted). After considering the undisputed facts here, the court finds that the opportunity for profit or loss also weighs in favor of employee status.

### C. Investment in Equipment or Materials

The third factor in the economic realities test is the plaintiffs' level of investment in the business, including their "investment in equipment or material, or [their] employment of other workers." Schultz, 466 F.3d at 305. "In analyzing this factor, courts look to the capital investments made in the dance club by the dancers and club owners respectively." McFeeley, 47 F. Supp. 3d at 271 (citing cases).

Here, the undisputed facts establish that the defendants' investment in the Club greatly exceeds the dancers' investment. In contrast to the dancers, whose primary investment is in the costumes that they choose to wear, the defendants have a considerable investment in the Club's building and furnishings and are responsible for the Club's bills and expenses. The defendants also pay wages to the Club's other workers and employees. Accordingly, this factor also weighs in favor of finding that the plaintiffs are employees rather than independent contractors.

### D. Degree of Skill Required

The fourth factor is the "degree of skill required for the work." Schultz, 466 F.3d at 305.

8

"Other courts have held that there is no special skill required to be an exotic dancer, pointing to the lack of instruction, certification, and prior experience required to become an exotic dancer." McFeeley, 47 F. Supp. 3d at 271-72 (citing cases). In this case, the defendants concede that there is little to no special skill required to dance at the Club and, thus, that this factor weighs in favor of finding that the plaintiffs are employees rather than independent contractors.

### E. Permanency of the Working Relationship

The fifth factor is the permanence of the working relationship. Viewing the evidence in the light most favorable to the defendants, the court finds that this factor tips against employee status, since the dancers have no specified term of employment, and some of the named plaintiffs danced at other establishments at the same time that they worked at the Club. See Id. at 272. Nonetheless, the lack of permanence in the relationship between the Club and the dancers is "not outcome determinative" of whether the dancers were employees of the Club. Id.; see also Thompson, 779 F. Supp. 2d at 150 (emphasizing that "[m]any of the courts that have found exotic dancers to be employees under the FLSA did so despite finding the employment relationship lacked a high degree of permanence") (citing cases).

### F. Integral Nature of Services Rendered

The sixth and final factor is the extent to which the services rendered by the plaintiffs were "an integral part of the putative employer's business." Schultz, 466 F.3d at 305. Here, the defendants concede that the presence of exotic dancers is essential to the Club's existence and, thus, that this factor counsels in favor of finding that the plaintiffs are employees rather than independent contractors.

9

G. <u>Consideration of All Factors</u>

After considering the six factors in combination and resolving any disputed facts in favor of the defendants, the court concludes, as a matter of law, that the plaintiffs are employees for purposes of the FLSA. The only factor that does not clearly weigh in favor of employee status is the permanence of the parties' working relationship, and courts have consistently found exotic dancers to be employees under the FLSA despite the commonly transient nature of the industry. See Thompson, 779 F. Supp. 2d at 151 (citing cases). Although the plaintiffs signed agreements labeling them as independent contractors, the label used by the parties is not dispositive under the economic realities test. McFeeley, 47 F. Supp. 3d at 273; see also McComb, 331 U.S. at 729. Instead, "the economic reality is that the dancers are not in business for themselves but are dependent upon finding employment in the business of others." Circle C. Invs., 998 F.2d at 329. Consequently, the court concludes that the plaintiffs are employees within the meaning of the FLSA.

II. <u>Coverage Determination</u>

The second issue raised in the plaintiffs' motion for partial summary judgment is whether their employment is covered by the FLSA. "There are two possible types of FLSA coverage." Josendis v. Wall to Wall Residence Repairs Inc., 662 F.3d 1292, 1299 (11th Cir. 2011). First, an employee may establish "individual coverage" by showing that she engaged in interstate commerce or in the production of goods for interstate commerce. Id. (citing 29 U.S.C. § 207(a)(1)). Second, an employee may establish "enterprise coverage" by showing that her employer has employees engaged in commerce or in the production of goods for commerce, and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000. Id. (citing 29 U.S.C. § 203(s)(1)(A)(i)-(ii)).

10

Based on the undisputed facts in the record, the court concludes that the plaintiffs qualify for individual coverage under the FLSA. Individual coverage exists for an employee who "regularly use[s] the instrumentalities of interstate commerce in [her] work." Thorne v. All Restoration Servs., 448 F.3d 1264, 1266 (11 Cir. 2006). It is well-settled that "[t]he internet is an instrumentality of internet commerce." United States v. Hornaday, 392 F.3d 1306, 1311 (11th Cir. 2004); see also AvePoint, Inc. v. Power Tools, Inc., 981 F. Supp. 2d 496, 512 (W.D. Va. 2013). Moreover, it is clear from the record that the Club's dancers are required to regularly use the internet to perform the dances that they are hired to perform. See, e.g. Harbour Dep. 61 (confirming that the Club's dancers use the internet to stream music for their performances); Carter Dep. 37 (acknowledging that the Club's dancers perform using music that is streamed from the internet and that the dancers choose their own music). Consequently, the court concludes, as a matter of law, that the plaintiffs are individually covered under the FLSA.* Compare Kendrick v. Eagle Int'l Grp., LLC, No. 08-80909-CIV-MARRA, 2011 U.S. Dist. LEXIS 36246, at *8 (S.D. Fla. Apr. 4, 2011) (finding that the undisputed facts established that the plaintiff qualified for individual coverage where the evidence showed that the plaintiff was required to use the internet and telephone to perform her job duties), with Jiminez v. So. Parking, Inc., No.07-23156-CIV-O'SULLIVAN, 2008 U.S. Dist. LEXIS 70147, at *23 (S.D. Fla. Sept. 16, 2008) (holding, as a matter of law, that individual coverage did not apply, where there was "no evidence that the plaintiff regularly used instrumentalities of internet commerce like the . . . internet" while washing cars).

---

* Having reached this decision, the court need not decide whether the plaintiffs qualify for enterprise coverage under the FLSA.

11

### III. Employer Determination

The next issue raised in the plaintiffs' motion for partial summary judgment is whether Southwest Virginia Investments, Harbour, and Carter are properly characterized as the plaintiffs' employers for purposes of the FLSA. In response to the plaintiffs' motion, Southwest Virginia Investments and Harbour concede this issue. However, Carter maintains that he cannot be classified as the plaintiffs' employer.

The FLSA defines the term "employer" to include "any person acting directly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "To determine whether an individual can be liable as an employer under the FLSA, 'courts generally look at the 'economic reality' of the individual's status in the workplace.'" McFeeley, 47 F. Supp. 3d at 274 (quoting Roman v. Gaupos III, Inc., 970 F. Supp. 2d 407, 416 (D. Md. 2013)); see also Brickey v. County of Smyth, 944 F. Supp. 1310, 1315 (W.D. Va. 1996). In so doing, courts examine a number of factors, including whether the purported employer has the power to hire and fire employees, supervise work schedules, control work conditions, determine the method or rate of payment, and maintain employment records. Brickey, 944 F. Supp. at 1315. No single factor is dispositive, nor is the mere fact that an individual maintains a high-level status in the business. McFeeley, 47 F. Supp. 3d at 274.

Based on the evidence in the record, the court is unable to conclude, as a matter of law, that Carter is properly characterized as the plaintiffs' employer for purposes of the FLSA. Although it is undisputed that Carter owns the Club's ATM machines, performs bookkeeping functions for the Club, and is one of several partners that loaned the Club money in 2006, the defendants' deposition testimony indicates that Carter does not manage or control the Club, hire or fire the Club's dancers,

12

set the dancers' hours, monitor the dancers' arrival or departure times, or determine the dancers' rate or method of payment. Construing the evidence in the light most favorable to Carter, the court is unable say that the factors relevant to the issue of employer status favor the plaintiffs as a matter of law. Accordingly, the issue of whether Carter is properly characterized as the plaintiffs' employer cannot be decided on summary judgment.

## IV. Willfulness Determination

The final issue raised in the plaintiffs' motion is whether the defendants willfully failed to comply with the FLSA. A finding of willfulness impacts the applicable limitations period. When a violation is non-willful, a two-year statute of limitation applies; when a violation is willful, a three-year statute of limitation applies. See 29 U.S.C. § 255(a). A willful violation occurs when an employer knew, or showed reckless disregard for the fact, that his conduct was prohibited. See McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).

In moving for summary judgment on this issue, the plaintiffs emphasize that an FLSA action was filed against the Club and Southwest Virginia Investments in 2010, and that Harbour drafted the dancers' independent contractor agreement following the commencement of the earlier action. That action, however, settled before any dispositive rulings were made by the court, and Harbour testified at his deposition that he continued to believe that the dancers were properly classified as independent contractors. Viewing the evidence in the light most favorable to the defendants, the court finds that whether the earlier action put Harbour or any other defendant on notice that their actions were prohibited by statute is a genuinely disputed fact and, thus, that the issue of willfulness must be resolved at trial. See Mohammadi v. Nwabuisi, 605 F. App'x 329, 333 (5th Cir. 2015) (holding that a genuine issue of material fact existed as to whether an earlier action, which settled, put the defendant on notice that her pay structure violated the FLSA).

13

## Conclusion

For the reasons stated, the motion for partial summary judgment filed by the plaintiffs will be granted in part and denied in part. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 8th day of December, 2015.

                                              Chief United States District Judge